An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored but may be permitted in accordance with the provisions of Rule 30(e)(3) of the *North Carolina Rules of Appellate Procedure*.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA26-23

Filed 5 August 2026

Mecklenburg County, No. 25 JT 000094-590

In re: D.M.B.

Appeal by respondent-mother from order entered 30 September 2025 by Judge C. Renee Little in Mecklenburg County District Court. Heard in the Court of Appeals 21 July 2026.

> *Robinson & Lawing, LLP, by Christopher M. Watford, for respondent-appellant mother.*
>
> *Senior Associate County Attorney Kristina A. Graham, for petitioner-appellee Mecklenburg County DSS.*
>
> *Womble Bond Dickinson (US) LLP, by Samuel B. Hartzell and Mary Elizabeth Barksdale, for guardian ad litem.*

PER CURIAM.

Respondent-Mother ("Mother") appeals following the termination of her parental rights to her son, David.[1] For the foregoing reasoning, we affirm.

I. Background

---

[1] A pseudonym.

Mecklenburg County Department of Social Services' Youth and Family Services ("YFS") obtained custody of David in early 2021, and David was adjudicated neglected and dependent 28 June 2021. Mother and David's father, who is not a party to this appeal, entered into family services agreements with YFS as part of David's disposition in an attempt to achieve reunification by remedying certain problems necessitating David's removal and adjudication. The trial court held several permanency planning hearings for David between 2022 and 2025, during which "the [trial court] found and concluded as a matter of law that it was contrary to [David's] health and safety to return to his home."

Ultimately, due to Mother and David's father's failures to make adequate progress on their case plans, the trial court elected to cease reasonable efforts towards reunification. Following a 29 January 2025 permanency planning hearing, the trial court entered an order in which it continued with a primary permanent plan of adoption, set a secondary permanent plan of guardianship or reunification, and directed YFS to file a termination petition. On 14 April 2025, YFS filed a petition to terminate the parental rights of Mother and David's father.

During the termination proceedings, the trial court heard evidence regarding David's mental health diagnoses, his behavioral issues, and his adoptability. Following the hearing, the trial court entered an order terminating the parental rights of both parents in order to achieve David's primary permanent plan of adoption. Mother appeals.

II.    Analysis

Mother raises two arguments, which we address in turn.

A.  Properly Supported Finding of Fact

Mother's first argument on appeal deals with Finding of Fact #4.  Specifically, she argues the portion stating "that the likelihood of adoption is medium to high" is unsupported by competent evidence and must be disregarded.  Despite Mother's multi-faceted argument attacking this finding, this argument simply asks this Court to reweigh the evidence on appeal, which we decline to do.

"The Juvenile Code provides for a two-stage process for the termination of parental rights: adjudication and disposition." *In re L.G.G.*, 379 N.C. 258, 263 (2021) (citation omitted).  Here, we are only concerned with the latter—the stage the trial court reaches only after determining there are grounds to terminate a parent's parental rights.  *Id.*  At the dispositional stage, the trial court must determine "whether terminating the parent's rights is in the juvenile's best interest." *Id.*

When reviewing the disposition portion of a termination order, we review the trial court's findings "to determine whether they are supported by competent evidence." *In re A.N.D.*, 380 N.C. 702, 705 (2022) (citations omitted).  If so, "the trial court's findings are binding on appeal." *Id.* (citation omitted).  "Under this standard, we cannot reweigh the evidence or judge its credibility; we must uphold that trial court's fact findings if they are supported by *any* evidence in the record." *In re H.B.*, 384 N.C. 484, 492 (2023) (emphasis in original and citation omitted); *see also In re*

*N.P.*, 374 N.C. 61, 66 (2020).  Therefore, as long as there is "some evidence" to support the trial court's finding, we must uphold that finding even though there may be "counterevidence" to the contrary.  *Id.* (emphasis removed).

Turning to the issue at hand, Finding of Fact #4 states:

> The Court also finds that *the likelihood of adoption is medium to high* in that [David] is still a young man who is consistently working on his behaviors and his mental health needs.  He has started to form bonds with people who would be willing to be explored for adoption.  While the Court recognizes the conditional nature of [Placement Option #1] expressing an interest in providing permanence so long as [David] is leveled down, it is still important to note that there are people including [Placement Option #1] who have been in [David's] life who are still a source of support and who would like to be an option for permanence for [David] if and when appropriate.

(Emphasis added).

As mentioned above, Mother takes issue with the italicized portion.  But this portion is properly supported by "some evidence" despite the existence of some "counterevidence."  *See id.* (emphasis removed).

For instance, the guardian ad litem ("GAL"), who met with David every two weeks, testified at a hearing during which her report was offered into evidence.  In the portion of the GAL report analyzing the best interest factors, the GAL concluded "that once [David] is free and legally cleared for adoption, he has a [h]igh likelihood of being adopted."

Likewise, David's social worker, who has been involved since November 2023, testified at the hearing, expressing familiarity with David's mental health diagnoses, treatment of those diagnoses, and David's behavioral issues and discussed potential, albeit currently conditional, adoption placements for David. Critically, the social worker testified that David's likelihood of adoption was "[v]ery likely."

Accordingly, there was *some* evidence to support the trial court's finding on David's adoptability. *See id.* Accordingly, we must uphold this finding because it is supported by competent evidence. *See In re A.N.D.*, 380 N.C. at 705.

## B. Best Interests of the Child

Mother next argues the trial court erred in its best interests determination terminating her parental rights to David. We again must disagree.

Again, at the dispositional stage, the trial court is concerned with "whether terminating the parent's rights is in the juvenile's best interest." *In re L.G.G.*, 379 N.C. at 263. In answering this question, the trial court examines several factors:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent . . . .
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2025). We review "the trial court's assessment of a juvenile's best interests solely for an abuse of discretion." *In re A.J.L.H.*, 386 N.C. 305, 313 (2024) (citations omitted). The abuse of discretion standard requires us to "defer to the trial court's decision unless it is manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (citations omitted).

While it is true that David has mental health and behavioral issues, has a bond with Mother, does not want her rights to be terminated, and does not have a permanent placement ready for immediate adoption, we cannot conclude the trial court abused its discretion. Against that evidence, the trial court examined and made findings on the following: David's age; the length of time David has been in foster care and his need for permanence; the high likelihood of David's adoption and how termination will aid in achieving David's adoption; how Mother and David's father have failed to remedy the conditions leading to David's removal and have failed "to consistently and successfully work a case plan for reunification[;]" the bond David has with his potential adoption placements; the instability Mother offers David; and Mother's lack of accountability with respect to David's situation and that she is "not in a position to parent [David] and meet his needs."

Based on its findings, the trial court examined each of the G.S. 7B-1110(a) factors, including those weighing against termination, and determined that termination of Mother's rights was in David's best interest. Even though certain

factors did not favor termination, the trial court was free "to give greater weight to other factors." *In re Z.L.W.*, 372 N.C. 432, 437 (2019) (citations omitted) (affirming order terminating parental rights despite a "strong bond" between father and daughters based on the weight of other factors). Accordingly, we must defer to the trial court's decision as it is neither "manifestly unsupported by reason" nor "so arbitrary that it could not have been the result of a reasoned decision." *In re A.J.L.H.*, 386 N.C. at 313 (citations omitted).

Mother, in making her argument, principally relies on *In re J.A.O.*, 166 N.C. App. 222 (2004). In that case, our Court reversed the termination of a mother's parental rights to her son. *Id.* at 228. In addition to the son's significant physical and mental health issues, he also had unimproved, violent behavioral problems. *Id.* at 226–28. At the termination hearing, the GAL attorney argued that he and the GAL did not believe termination was in the son's best interests, a first for that particular GAL attorney. *Id.* at 226–27. The evidence also revealed that only the mother was "connected to and interested" in the son, and the son's foster family did not wish to adopt him. *Id.* at 228. In reversing the trial court, our Court explained the "remote chance" of adoption did not justify termination. *Id.* at 228.

Despite some similarities, the differences between *In re J.A.O.* and David's situation are glaring. In particular, David has made progress and improved his behaviors and the GAL in David's case recommended termination. And, contrary to Mother's characterization, being that we concluded the finding on David's high

likelihood of adoption was supported by competent evidence, there is not merely a "remote possibility of adoption." All told, the facts of David's case are different from, in the words of our Supreme Court, *In re J.A.O.*'s "exceptional circumstances[.]" *See In re J.A.J.*, 381 N.C. 761, 782 (2022) (citing *In re J.A.O.*, 166 N.C. App. at 227–28). Thus, *In re J.A.O.* does not control and the trial court did not abuse its discretion in terminating Mother's parental rights.

## III. Conclusion

We conclude there was competent evidence to support the trial court's finding regarding David's likelihood of adoption and also conclude the trial court did not abuse its discretion in terminating Mother's parental rights. We affirm.

AFFIRMED.

Panel consisting of Chief Judge DILLON and Judges STADING and FREEMAN.

Report per Rule 30(e).